# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs October 24, 2012

## STATE OF TENNESSEE v. THOMAS L. AGNEW

### Appeal from the Criminal Court for Sullivan County
### No. S58609    Robert H. Montgomery, Jr., Judge

_____

### No. E2011-02720-CCA-R3-CD-FILED-DECEMBER 26, 2012

_____

The Defendant, Thomas L. Agnew, appeals from his Sullivan County Criminal Court conviction for third offense driving on a revoked or suspended license, a Class A misdemeanor. See T.C.A. § 55-50-504(a)(1), (2) (Supp. 2009) (amended 2010). The Defendant was sentenced to eleven months and twenty-nine days, with six months to be served in jail at 75%. On appeal, he contends that the trial court erred in imposing six months of confinement. We affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which THOMAS T. WOODALL and D. KELLY THOMAS, JR., JJ., joined.

Stephen M. Wallace, District Public Defender; and Leslie S. Hale, Assistant Public Defender, for the appellant, Thomas L. Agnew.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith Devault, Senior Counsel; Barry P. Staubus, District Attorney General; and Teresa Ann Nelson, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The Defendant was charged with driving on a suspended or revoked license, resisting arrest, and third offense driving on a suspended or revoked license. Pursuant to a plea agreement with the State, he pleaded no contest to the driving on a suspended or revoked license charge and third offense driving on a suspended or revoked license charge, and the two were merged. The resisting arrest charge was dismissed.

At the plea hearing, the State recited the facts it would have offered at a trial:

> [O]n or about May the 25th of 2010, Officer Davis with the Sullivan County Sheriff's Office received information that Mr. Agnew, the Defendant here today, was driving his truck near Blountville, Tennessee, on Franklin Street, a location in Sullivan County.
>
> He further received information and verified with dispatch that at the time the Defendant was driving his vehicle his driving privileges were suspended in the state of Tennessee.
>
> Upon stopping the vehicle Officer Davis confirmed that Mr. Agnew was indeed the driver in the vehicle and the sole occupant; at which time he checked his driver's license again and verified it was suspended. At that time he was arrested for driving on suspended.
>
> Your Honor, the State's proof would further be that he has two prior driving on suspended convictions as set forth in Count 3 of the presentment.

The trial court held a combined sentencing hearing for this offense and for the Defendant's convictions in case S54725, in which he was found guilty of one count of cruelty to animals and three counts of attempted cruelty to animals. According to statements by the court and defense counsel at the sentencing hearing, the driving offense occurred when the Defendant drove to court for his trial in the animal cruelty case. This appeal concerns only the driving offense.

At the sentencing hearing, Penny Tester, the chief nurse of the Sullivan County Jail, testified for the defense that the Defendant was brought to the jail at 7:10 p.m. on May 25, 2010, but that a nurse was unable to check him due to his aggressive behavior. She said the jail medical records reflected that the Defendant was combative when he arrived to be booked and that the officers "sprayed" him to subdue him. She said he exhibited aggressive and unstable behavior. She said that at 9:32 p.m., the nurse checked the Defendant's blood sugar, which was 477. A doctor ordered insulin, but at 11:05 p.m., the Defendant refused it. At this time, the Defendant's blood sugar was 354. At 11:10 p.m., he agreed to take the insulin. His blood sugar was 175 at 5:00 a.m. on May 26. The Defendant was taken to court at 2:00 that afternoon. A nurse was called to check his blood sugar, which was 371. He was given insulin at 4:15 p.m. Later that afternoon, the Defendant complained that his blood

sugar was too low. A nurse determined that his blood sugar was 301. At 10:00 p.m., the Defendant complained he was "passing out" and a nurse checked his vital signs. The nurse checked the Defendant's vital signs again at 5:15 a.m., and they were stable. Nurse Tester thought a normal blood sugar level was less than 90. She said that a person whose blood sugar was usually 300 would feel "normal" even though his or her blood sugar was not at a normal level.

The Defendant, who was sixty-five years old, testified that he began working in the livestock business when he was thirteen or fourteen. He had been employed and had worked independently. He was a trained auctioneer and had worked at and owned a stockyard in Iowa. He was a licensed livestock dealer. He said he bought poor quality livestock, tried to improve their condition and weight, and sold them. He testified about his care of the horse and three cattle that were the subject of the animal cruelty case. He said he fed and watered the animals. He said that he would abide by a court order that he not own or have livestock in his care but that for economic reasons, he preferred that the court allow him to continue to trade cattle to supplement his Social Security retirement income. He said he transported animals according to United States Department of Agriculture guidelines and identified a certificate of award he received from Tennessee Governor Phil Bredesen regarding his work in the livestock industry.

The Defendant testified that he drove to court out of necessity, even though his license was suspended. He said he had no other way to come to court. He said he could not rely on others continuously to provide his transportation. He said he had since been using public transportation and took public transportation to court for the sentencing hearing. He said that public transportation must be arranged three to four weeks in advance and that he was unaware of the program before his arrest on May 25, 2010. He said that he had spent twenty-five to thirty years trying to have his driver's license reinstated and that he was "fighting with the state of Virginia." He said his license was suspended "over money." He said that he had driven for over fifty years without an accident or a driving while intoxicated charge and that he had only one speeding ticket. He acknowledged that he was charged in Kingsport on February 14, 2009, with driving while his license was suspended. The court noted that the Defendant was placed on probation for that offense on September 22, 2009, for eleven months and twenty-nine days. The Defendant said, however, that although he picked up trash for two days, he was unaware he was on probation for the offense.

On cross-examination, the Defendant acknowledged that he was convicted of driving while his license was suspended in 2006 in Washington County. Relative to this case, he said he parked in a lot away from the courthouse when he drove to his trial. He agreed that three witnesses testified on his behalf on multiple days of the animal cruelty trial. When

questioned by the court about his probation in Ohio in 2001, he said a patrolman who testified against him lied.

On redirect examination, the Defendant testified that he would be able to make arrangements to use public transportation if he were placed on probation, provided he knew the dates he was supposed to report. He said that he did not want to perform community service because he would have to arrange transportation but that he would do it if the court ordered it. He said he had done volunteer work on his own with a program that allowed children to ride horses. He said he preferred not to serve all of his sentence in jail.

The State introduced certified copies of the Defendant's driving history and judgments for two prior Tennessee convictions of driving while his driver's license was suspended. The State also introduced a copy of the Defendant's 2001 Ohio judgment for convictions of assault, obstructing official business, and resisting arrest, for which he received a two-year sentence. The court received the Defendant's presentence report, which noted five additional Iowa convictions for driving-related offenses occurring in the 1990s, one of which was for driving while his license was suspended. The report also noted a 1980 conviction for criminal contempt from federal court in Iowa. The presentence report noted the Defendant's prior military service in the Army National Guard.

After receiving the evidence, the trial court noted its consideration of the evidence at the plea and sentencing hearings, the presentence report, the principles of sentencing, the arguments, the nature and characteristics of the criminal conduct, the enhancing and mitigating factors, and the Defendant's statements to the court. In considering whether any enhancement factors applied, the court noted the Defendant's previous convictions of driving while his license was suspended, testimony about his transporting animals, and his ownership of a vehicle. See T.C.A. § 40-35-114(1) (2010) (amended 2012). The court found that the Defendant failed to comply with the conditions of a sentence involving community release when he committed a new offense of driving while his license was suspended when he was on probation for an earlier conviction of the same offense. See id., § 40-25-114(13)(C). The court afforded the Defendant some mitigating weight for his prior military service. See id., § 40-35-113(13) (2010). The court imposed sentences of eleven months, twenty-nine days at 75% for cruelty to animals and six months at 75% for each of the three counts of attempted cruelty to animals. Relative to the present case, the court sentenced the Defendant to eleven months and twenty-nine days, with six months of the sentence to be served at 75%. The court imposed all of the sentences consecutively on the basis that the Defendant had an extensive record of criminal activity. See id., § 40-35-115(a)(2) (2010). This appeal followed.

-4-

The Defendant contends that the trial court erred in imposing six months' incarceration and that he should have received a sentence of probation. The State contends that the trial court properly sentenced the Defendant. We agree with the State.

When imposing a misdemeanor sentence, the trial court is not required to conduct a sentencing hearing, but it must afford the parties a reasonable opportunity to address the length and manner of service of the sentence. T.C.A. § 40-35-302(a) (2010) (amended 2011). We note that the law provides no presumptive minimum for misdemeanor sentencing. State v. Creasy, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994). In misdemeanor sentencing, the trial court is not required to place specific findings on the record. State v. Troutman, 979 S.W.2d 271, 274 (Tenn. 1998). However, the trial court must consider the purposes and principles of the Criminal Sentencing Reform Act of 1989. T.C.A. § 40-35-302(d); see Troutman, 979 S.W.2d at 274 ("[W]hile the better practice is to make findings on the record when fixing a percentage of a defendant's sentence to be served in incarceration, a trial court need only consider the principles of sentencing and enhancement and mitigating factors in order to comply with the legislative mandates of the misdemeanor sentencing statute.").

Appellate review of misdemeanor sentencing is de novo on the record with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d) (2010). This presumption of correctness is conditioned upon the affirmative showing that the trial court considered the relevant facts, circumstances, and sentencing principles. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). As the Sentencing Commission Comments to section 40-35-401(d) note, the burden is on the appealing party to show that the sentence is improper. When determining if confinement is appropriate, a trial court should consider if:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

T.C.A. § 40-35-103(1) (2010).

The record reflects that the Defendant has a long history of criminal conduct and that he had previously been afforded the opportunity to rehabilitate himself while on probation

for prior offenses but had not done so. The Defendant had two prior Tennessee convictions and one prior Iowa conviction for driving while his license was suspended dating back to the 1990s. He had additional previous convictions for other driving-related offenses, criminal contempt, assault, obstructing official business, and resisting arrest. The existence and nature of his prior convictions speak poorly of his prospect of rehabilitation. His potential for rehabilitation was relevant to the court's determination of the length and the manner of service of the sentence. See id. § 40-35-103(5). The Defendant has not demonstrated his suitability for a sentence of full probation. He is not entitled to relief.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE